## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **PEGGY SLICHTER**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**THE SCHOOL BOARD OF LEE COUNTY, FLORIDA**, a political subdivision of the State of Florida,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No.   2:21-cv-704**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **PEGGY SLICHTER** ("SLICHTER"), by and through undersigned counsel, and bring this action against The School Board of Lee County, Florida ("Defendant") and state the following for her Complaint:

## INTRODUCTION

1.      This is an action brought under Federal Rehabilitation Act of 1973 ("Rehab Act"), Family & Medical Leave Act ("FMLA"), 42 U.S.C. §1983 ("§1983"), and Florida's Public Whistleblower Act (PWA) for (1) disability discrimination in violation of the Rehab Act, (2) retaliation in violation of the FMLA, (3) racial/national origin discrimination brought via §1983, and (4) retaliation in violation of the PWA.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff' claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Lee County is within the Fort Myers Division.

## PARTIES

5.     Plaintiff, **PEGGY SLICHTER** ("**SLICHTER**") is an individual and a resident of Florida who at all material times resided in Lee County, Florida and was employed by the Defendant in Lee County, Florida.

6.     Defendant, **THE SCHOOL BOARD OF LEE COUNTY, FLORIDA** ("School" or "Defendant") is a political subdivision of the state of Florida and oversees the public school system in and for Lee County, Florida. The Defendant was Plaintiff's employer. The Defendant receives in excess of $1,000,000.00 annually from the federal government in financial assistance. The Defendant is a "person" as intended by 42 U.S.C. §1983.

2

## GENERAL ALLEGATIONS

7.     **SLICHTER** began her employment with the Defendant in August 1997, and most recently was employed as an assistant principal at Manatee Elementary School, which position she began in December 2020.

8.     **SLICHTER** always performed her assigned duties in a professional manner and was very well qualified for her position.

9.     **SLICHTER** always received positive performance reviews until she disclosed her disabilities to the Defendant, took FMLA leave, objected to racial/national origin discrimination and engaged in statutorily protected activity under the PWA.

### Slichter Takes Leave to Care for Her Disabilities & Serious Health Conditions.

10.     Section 504 of the Rehab Act prohibits recipients of federal financial assistance from discriminating against qualified individuals with disabilities in employment.

11.     **SLICHTER** is a qualified person with a disability as she has an impairment of the cardio-pulmonary, gastrointestinal and mental/emotional systems – Covid-19, ulcers, anxiety, depression, post-traumatic stress disorder and insomnia – which limits her ability to perform certain major life activities, including eating, thinking and working when not in remission.

12.     **SLICHTER** has a history of these impairments that limits major bodily functions and several major life activities. **SLICHTER**'s impairments qualify as a disability as that term is defined under 28 C.F.R. §36.104(iii).

13.     On or about March 13, 2021, **SLICHTER** took FMLA leave to care for the above disabilities/serious health conditions and returned on April 13, 2021.

14.     Just 2-days after returning from FMLA leave, the Defendant stripped **SLICHTER** of job duties before informing her on May 17, 2021, that her annual contract would not be renewed and that thus her more than 20-year career with the Defendant would involuntarily end.

### Slichter Reports Illegal Activity Related to School Safety Violations.

15.     In her position, **SLICHTER** observed a litany of illegal conduct by the Defendant, including School Environmental Safety Incident Reporting ("SESIR").

16.     As the Florida Department of Education describes:

School Environmental Safety Incident Reporting grew out of the public's concern that children be safe in the school environment. In 1995-96 in response to this concern, the SESIR system was initiated to enable schools to track incidents and analyze patterns of violent, criminal or disruptive activity. The intent is for there to be complete and objective data from which to design interventions to improve the learning environment. SESIR operates at the school, district and state levels. School-level data are sent to the district in a standardized format and in turn, the district sends data to the Department of Education (DOE) where it is compiled into an annual report. This report presents the frequency of the SESIR incidents by district and for the state as a whole. Additionally, the disciplinary actions associated with the incidents are reported.

The School Environmental Safety Incident Reporting System collects data on 26 incidents of crime, violence, and disruptive behaviors that occur on school grounds, on school transportation, and at off-campus, school-sponsored events, during any 24-hour period, 365 days per year. Incidents are reported by schools to the districts which, in turn, provide the data to the DOE.

SESIR takes a comprehensive look at serious crime and violence on the school campus.

17.     Compliance with SESIR is mandated by Florida law, more specifically F.S. §§1001.212, 1001.54(3), 1006.07(6)(a)1 and (9), and 1006.13, in addition to Fla. Admin. Code §6A-1.0017. The Marjorie Stoneman Douglass High School shooting in Parkland, Florida caused the state to completely revamp its school safety protocols. Faculty is supposed to stop and then report any serious issues to school administration, like fighting, drugs or threats, and intimidation. Administration is then supposed to review the facts with a threat assessment team and the student involved, before it is potentially reported to the state.

18.     Nevertheless, the Defendant utterly fails to comply with Florida law.

19.     As was observed by **SLICHTER**, the Defendant has a policy to under report – or never at all report – serious SESIR incidents to the Florida Department of Education, potentially putting children and faculty in danger.

20.     Shortly after beginning her tenure at Manatee Elementary School, **SLICHTER** noticed that serious and obvious SESIR incidents were not being reported by the Defendant's principal.

21.    In fact, the Defendant's records show that Manatee Elementary reported zero SESIR cases to the state for the entire 2020-2021 school year.

22.    This was despite the fact that serious incidents had occurred, but which had gone unreported despite the fact they were documented in the Defendant's own records as follows:

- "Student made a verbal threat toward two other students, and also placed his hands around another student's neck."

- "The student showed a BB gun that he had in his backpack to other students in the class."

- "There were three students that stated they were going to blow up the school with a bomb."

23.    Instead of being reported to the state as SESIR incidents, the Defendant's administration classified these events as lesser violations, categorized as "other" or "safety violation," in direct contravention of Florida law. In fact, the Defendant's principal directly stated words to the effect of "we do not SESIR report in MY school."

24.    As more of incidents occurred and were not reported, **SLICHTER** pushed for compliance with the SESIR reporting, including (but not limited to) doing so in writing on multiple occasions including on March 11, 2021 and April 23, 2021, the latter of which detailed how the Defendant failed to report student discipline and allowed him to return to school without any consequences only to do physical harm to another student the very next day. That physical harm was

then intentionally misclassified as just being "peer conflict" and was never reported in SESIR.

25.    However, after doing so, the Defendant's principal stripped her of her reporting abilities altogether on April 15, 2021, writing in an email "with regards to discipline, designees and I will handle. I will not need you to enter referrals."

26.    Just weeks after engaging in statutorily protected activity, the Defendant suddenly informed **SLICHTER** that she was to be involuntarily separated from her 24 years of employment (via nonrenewal of her annual contract).

27.    Taking adverse employment action against employees who report school safety issues has become an implicit policy of the Defendant.

28.    In December 2019, an assistant principal disarmed a 12-year-old sixth-grader who brought a loaded handgun to Harns Marsh Middle School in Lehigh Acres. The assistant principal promptly involved the school resource officer and the incident ended safely. Nevertheless, the Defendant took adverse action against the assistant principal, only reinstating her after the local news media reports on the incident led to a public outcry and thousands of signatures on a petition in support of her reinstatement.

29.    The Defendant's refusal to comply with Florida law as delineated in ¶23 was part of a policy to underreport – or never report – serious school safety issues, the failure of which at Harns Marsh Middle School nearly led to what Lee

County Sheriff Carmine Marceno described: "This could've been the next Parkland massacre. We were one second away from a Columbine here."

30.     Despite the requirements of Florida law, the Defendant once again failed to timely report serious safety issues. In fact, the educator who finally acted to prevent the school shooting was a substitute teacher who had previously reported to students who were planning the shooting in the past. Nevertheless, they remained enrolled in good standing at Harns Marsh, during which the two students were studying the 1999 Columbine attack, were trying to learn how to construct pipe bombs, and how to buy firearms off the black market.

**Slichter Reports Illegal Activity Related to Title I.**

31.     Title I, Part A (Title I) of the Elementary and Secondary Education Act, as amended by the Every Student Succeeds Act (ESEA) provides financial assistance to local educational agencies (LEAs) like the Defendant and schools with high numbers or high percentages of children from low-income families to help ensure that all children meet challenging state academic standards. LEAs like the Defendant are required to submit timely reports in order to receive funds.

32.     The Defendant failed to comply with this law too.

33.     More specifically, the Defendant does not comply because it was woefully late in completing its Title I Reports, which **SLICHTER** objected to in writing on March 11, 2021.

**Slichter's Race/National Origin was a Motivating Factor in her Termination.**

34.     **SLICHTER** is a member of a protected class as she is of Hispanic race and Puerto Rican national origin.

35.     **SLICHTER** is one of only 4 Hispanic administrators throughout the Defendant.

36.     The Defendant has a pattern, practice and policy of discriminating against minority employees in assistant principal positions, like **SLICHTER**.

37.     There exist statistically significant class disparities in promotions, assignments and retention of racial/national origin minorities in the position of assistant principal.

38.     The Defendant specifically favors non-minorities for these positions and has created and condoned a systemic pattern and practice, which has become implicit policy, to discriminate against racial/national origin minorities in the assistant principal position.

39.     The Defendant's racial/national origin demographic is grossly disproportionate and these minorities are rarely hired or retained for assistant principal positions despite their objectively superior performance and qualifications.

40.     To the extent the Defendant claims that **SLICHTER**'s termination was the product of any untimely act on her part, her Caucasian-American assistant

principal committed the same or substantially the same acts but suffered no discipline whatsoever.

## COUNT I – VIOLATION OF THE REHAB ACT, AS AMENDED

41.     Plaintiff incorporates by reference Paragraphs 1-14 of this Complaint as though fully set forth below.

42.     At all relevant times, **SLICHTER** was an individual with a disability within the meaning of the Rehab Act.

43.     Specifically, **SLICHTER** has physical impairments that substantially limit one or more of her major life activities and bodily functions, has a record of the impairment, and is regarded by the Defendant as having such impairments.

44.     **SLICHTER** is a qualified individual with disabilities as that term is defined in the Rehab Act.

45.     **SLICHTER** is an individual who, with reasonable accommodation, at all relevant times could perform the essential functions of her job with the Defendant.

46.     At all material times, **SLICHTER** was an employee and the Defendant was her employer covered by and within the meaning of the Rehab Act.

47.     The Defendant was made aware and was aware of **SLICHTER**'s disabilities, which qualify under the Rehab Act.

48.     The Defendant discriminated against **SLICHTER** with respect to her terms, conditions, and privileges of employment because of her disabilities by denying her requests for reasonable accommodations.

49.     **SLICHTER**' requested reasonable accommodations would not have cost the Defendant any money or required the expenditure of other resources, and would not have affected other employees.

50.     **SLICHTER**' requested reasonable accommodations would have allowed her to perform the essential functions of her position.

51.     The Defendant conducted itself with malice or with reckless indifference to **SLICHTER**' federally protected rights.

52.     The Defendant has failed to accommodate **SLICHTER** and discriminated against **SLICHTER** in violation of the Rehab Act by interfering with her enjoyment of all benefits, privileges, terms, and conditions of her employment.

53.     The conduct of the Defendant altered the terms and conditions of **SLICHTER**' employment and **SLICHTER** suffered negative employment action.

54.     As a direct and proximate result of the violations of the Rehab Act, as referenced and cited herein, **SLICHTER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

55.     As a direct and proximate result of the violations of the Rehab Act as referenced and cited herein, and as a direct and proximate result of the prohibited

acts perpetrated against her, **SLICHTER** is entitled to all relief necessary to make her whole.

56.     As a direct and proximate result of the Defendant's actions, **SLICHTER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing the Defendant to cease and desist from all disability discrimination of all employees, and to return the Plaintiff to work with the reasonable accommodations she requested;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v.   Declaratory relief declaring the acts and practices of Defendant to be in violation of the statute cited above;

vi.   Reasonable attorney's fees plus costs;

vii.   Compensatory damages, and;

viii.   Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA")- RETALIATION

57.   The Plaintiff hereby incorporates by reference Paragraphs 1-14 in this Count by reference as though fully set forth below.

58.   **SLICHTER** qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since she suffered from a serious health condition, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider and **SLICHTER** worked more than 1,250 hours in the preceding 12 months of employment with the Defendant.

59.   **SLICHTER** informed the Defendant of her need for leave due to her serious health conditions.

60.   The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

61.     If the Defendant were to have decided that **SLICHTER**'s expected absence was not FMLA-qualifying, it must have notified her of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

62.     The Defendant has never provided **SLICHTER** with any notice disqualifying her FMLA leave.

63.     In fact, the Defendant determined that **SLICHTER** was eligible for leave under the FMLA but then terminated her employment because of her request for federally protected medical leave and required reinstatement.

64.     **SLICHTER** engaged in activity protected by the **FMLA** when she requested leave due to her serious health conditions, consistently informing the Defendant of the same.

65.     The Defendant knew that **SLICHTER** was exercising her rights under the FMLA.

66.     **SLICHTER** complied with all of the notice and due diligence requirements of the FMLA.

67.     A causal connection exists between **SLICHTER**'s request for FMLA-protected leave and required reinstatement and the Defendant's termination of her employment.

68.     The Defendant retaliated by altering the terms and conditions of **SLICHTER**'s employment by terminating **SLICHTER**'s employment because she engaged in the statutorily protected activity of requesting FMLA leave. The

Defendant terminated her because she engaged in this statutorily protected activity.

69.     The Defendant engaged in willful and intentional retaliation in violation of the FMLA by terminating **SLICHTER**'s employment because she engaged in activity protected by the FMLA.

70.     As a result of the above-described violations of FMLA, **SLICHTER** has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

### COUNT III – VIOLATION OF 42 U.S.C. §1981 VIA 42 U.S.C. §1983

71.     Plaintiff incorporates by reference Paragraphs 1-9 and 34-40 of this Complaint as though fully set forth below.

72.     **SLICHTER**, by virtue of her race (Hispanic) and national origin (Puerto Rican) is a member of a protected class.

73.     At all material times, **SLICHTER** was an employee and the Defendant was the public employer of **SLICHTER**.

74.     The Defendant, acting under the color or state law, engaged in unlawful employment practices prohibited by §1981 by creating, condoning and perpetuating a discriminatory and hostile work environment and interfering with **SLICHTER**'s contractual rights because of her race/national origin.

75.     The Defendant engaged in unlawful employment practices prohibited by §1981 by creating, condoning and perpetuating a discriminatory and hostile work environment and interfering with **SLICHTER**'s contractual rights because **SLICHTER** was treated less favorably than similarly situated employees outside **SLICHTER**'s protected class.

76.     The Defendant acted with malice and reckless disregard for **SLICHTER**'s rights under §1981.

77.     Supervisory personnel of the Defendant intentionally subjected **SLICHTER** to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of **SLICHTER**'s employment, including the adverse action of loss of pay.

78.     At all material times, the Defendant's personnel had authority to affect, indirectly or directly, the terms and conditions of **SLICHTER**'s employment.

79.    At all material times, Defendant's personnel acted under the color of state law as they acted with authority possessed by virtue of their employment with the state and had authority to affect, indirectly or directly, the terms and conditions of **SLICHTER**'s employment.

80.    The Defendant's personnel intentionally subjected **SLICHTER** to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of her employment and by knowingly failing and refusing to protect **SLICHTER**, and other minorities, from those hostile and abusive conditions.

81.    The actions of the Defendant were intentional, willful, and malicious and/or in deliberate indifference for **SLICHTER**'s clearly established legal rights as secured by U.S.C. §1981 and the Civil Rights Act of 1991.

82.    The Defendant could not have believed doing nothing was lawful in light of the clearly established law that racial harassment and discrimination was an infringement of legal rights.

83.    The actions of the Defendant in intentionally engaging in and condoning racial harassment and discrimination against **SLICHTER** has caused **SLICHTER** great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing the Defendant to cease and desist from all racial discrimination of all employees, and to return the Plaintiff to work with the reasonable accommodations she requested;

ii. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of Defendant to be in violation of the statute cited above;

vi. Reasonable attorney's fees plus costs;

vii. Compensatory damages, and;

viii. Such other relief as this Court shall deem appropriate.

## COUNT IV – VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT

84. Plaintiff incorporates by reference Paragraphs 1-9 and 15-33 of this Complaint as though fully set forth below.

85.     At all material times, **SLICHTER** was an employee and the Defendant was her employer covered by and within the meaning of the PWA.

86.     **SLICHTER** was qualified for the position that she held with the Defendant.

87.     **SLICHTER** did engage in statutorily protected activity.

88.     **SLICHTER** did make several disclosures of the Defendant's violations of federal and Florida law and of gross mismanagement, malfeasance and misfeasance to the Defendant.

89.     **SLICHTER** did suffer adverse employment action, which is causally linked to her engagement in statutorily protected activity.

90.     **SLICHTER**'s complaints and disclosures constitute a protected activity because her complaints and disclosures were concerning an unlawful activity of the Defendant.

91.     Said protected activity was the proximate cause of the Defendant's negative employment actions against **SLICHTER**, which included Plaintiff's termination.

92.     Instead of investigating **SLICHTER**'s complaints and lauding her honest reporting of violations of law, the Defendant retaliated against **SLICHTER** by terminating her employment.

93.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the PWA.

94.     As a direct and proximate result of the violations of the PWA, as referenced and cited herein, **SLICHTER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

95.     As a direct and proximate result of the violations of the PWA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SLICHTER** is entitled to all relief necessary to make her whole as provided for under the PWA.

96.     As a direct and proximate result of the Defendant's actions, **SLICHTER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing the Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she

maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.   Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v.   Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.   Temporary reinstatement under F.S. §112.3187(9)(f);

vii.   Reasonable attorney's fees plus costs;

viii.   Compensatory damages, and;

ix.   Such other relief as this Court shall deem appropriate.

## **DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

Respectfully submitted,


Dated: September 21, 2021          **/s/ Benjamin H. Yormak_____**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com